UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOWARD DAVID RICHARDSON III,

                    Plaintiff(s),

        v.

INFINITI OF LYNNWOOD,

                    Defendant(s).

CASE NO. C25-1502-KKE

ORDER ON DEFENDANTS' MOTIONS
TO COMPEL ARBITRATION

Plaintiff Howard David Richardson III brought this lawsuit alleging that Defendants were involved in submitting auto loan applications on his behalf without his consent. Defendants Infiniti of Lynnwood ("Infiniti"), Sunil Loprinzi (Infiniti's employee), and Santander Consumer USA Inc. ("Santander") all moved to compel arbitration pursuant to the terms of an installment contract that Richardson signed when he purchased an Audi from Infiniti. Dkt. Nos. 18, 20. Because there is no dispute that Richardson signed the last page of the contract, which contains an arbitration clause, and because that clause encompasses this dispute, the Court will grant Defendants' motions and direct the parties to proceed to arbitration.

## I.    BACKGROUND

In January 2023, Richardson purchased a used 2016 Audi S5 from Infiniti. Dkt. No. 8 ¶ 1, Dkt. No. 20-1 ¶ 3. He alleges that Infiniti told him the transaction was an "all-cash purchase" and that he paid approximately $9,000 for it. Dkt. No. 8 ¶ 2. At the same time, Richardson

ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION - 1

acknowledges (*id.* ¶ 20) signing the final page of a contract with Infiniti titled Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision), which provides for financing of $27,723.82 of the purchase price in addition to a $9,000 down payment.  Dkt. No. 20-1 at 8, 12. That document contains an arbitration clause, which states, in relevant part:

> PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS
>
> 1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY
>
> ….
>
> Any dispute or claim, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

*Id.* at 12.  Immediately before Richardson's signature, the contract states, as relevant:

> NOTICE TO BUYER: (a) Do not sign this contract before you read it ….  You agree to the terms of this contract.  You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it.  You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below.

*Id.*  Finally, the contract provides that "Seller [Infiniti] assigns its interest in this contract to SANTANDER CONSUMER USA INC[.]" *Id.*

In August 2025, Richardson filed this lawsuit against Infiniti, Loprinzi, and Santander, seeking millions of dollars in damages and asserting claims for wire fraud, identity theft, and violations of the Truth in Lending Act, the Fair Credit Reporting Act, and the Racketeer Influenced and Corrupt Organizations Act.  *See* Dkt. Nos. 1, 1-1, 5.  He later filed an Amended Complaint, in which he alleges that he "paid in cash" for the vehicle, that he "never executed any financing agreement" (despite acknowledging signing the last page of the installment contract), and that

ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION - 2

Infiniti "prepared and submitted multiple credit applications in his name to third-party banks" including Santander "[w]ithout [his] knowledge or consent[.]" Dkt. No. 8 ¶¶ 4, 19. He claims that, besides his signature on the final page of the installment contract (which he acknowledges is his "true signature"), "[a]dditional signature lines on the contract and accompanying forms contained forgeries or digitally replicated signatures copied from other documents." *Id.* ¶¶ 20–21. Although the amended complaint contains no allegations concerning Loprinzi, an earlier complaint alleges that Loprinzi "was directly informed of the fraud through email communications and chose to ignore the … evidence provided." Dkt. No. 5 at 9.

Infiniti (along with Loprinzi) and Santander each separately moved to compel arbitration pursuant to the installment contract's arbitration clause. Dkt. Nos. 18, 20. Richardson filed a response, opposing both motions. Dkt. No. 22. And Infiniti and Santander filed replies. Dkt. Nos. 23, 24. The Court finds oral argument unnecessary; and both motions are now ripe for consideration.

## II.    DISCUSSION

### A.    Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. Accordingly, courts place arbitration agreements on "equal footing with other contracts," and recognize "a federal policy in favor of arbitration[.]" *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

If the existence of an arbitration agreement is "in issue," the FAA provides that "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. In applying this procedure, courts rely on the summary judgment standard of Federal Rule of Civil Procedure 56. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Thus, a court will only "decide as a matter of law that the parties did or did not enter into" an arbitration agreement if "there is no genuine issue of fact concerning the formation of the agreement[.]" *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). The party denying the existence of an agreement receives "the benefit of all reasonable doubts and inferences that may arise." *Id.* (quoting *Par–Knit Mills*, 636 F.2d at 54); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (holding that "presumption in favor of arbitrability" applies only where the *scope* of an agreement to arbitrate is ambiguous: "If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply.").

**B.      Richardson's Claims are Subject to Mandatory Arbitration.**

Here, there is no genuine dispute of fact as to whether Richardson entered into a binding arbitration agreement—he acknowledges signing the final page of the installment contract containing the arbitration clause. Because that arbitration clause broadly encompasses "[a]ny claim or dispute" between Richardson and any of the Defendants, Richardson's claims are subject to mandatory arbitration. Dkt. No. 20-1 at 12.

"In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)). Washington courts use "the objective manifestation test" to determine contract formation. *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004) (citing *Wilson Ct. Ltd.*

*P'ship v. Tony Maroni's, Inc.*, 952 P.2d 590, 594 (Wash. 1998)). "Accordingly, for a contract to form, the parties must objectively manifest their mutual assent." *Id.* (citing *Yakima Cnty. Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993)). A party who signs a contract manifests assent—it generally makes no difference if they read or understood it. *Michak v. Transnation Title Ins. Co.*, 64 P.3d 22, 27–28 (Wash. 2003).

Here, Richardson alleges his "electronic signature was automatically applied" to pages 1 through 4 of the installment contract (Dkt. No. 22 at 2) but acknowledges he signed page 5 (Dkt. No. 8 ¶ 20)—the page containing the arbitration provision (*see* Dkt. No. 20-1 at 12). Moreover, a review of Richardson's signatures on the other four pages reveals that they are not, as he claims, "identical across documents" as to suggest the signatures were duplicated. Dkt. No. 22 at 4; *see* Dkt. No. 20-1 at 8–11. And Richardson cites no authority suggesting that signing the final page of a contract below a notice that states "[y]ou agree to the terms of this contract" is insufficient— without also signing each other page—to manifest assent to the entire agreement. Dkt. No. 20-1 at 12. In any event, the arbitration provision appears on the page Richardson admittedly signed. *Id.*

That provision plainly encompasses Richardson's claims. It provides for mandatory arbitration of "[a]ny claim or dispute, whether in contract, tort, statute[,] or otherwise … between you and us [Infiniti] or our employees, agents, successors[,] or assigns, which arises out of or relates to your credit application, [your] purchase … of this vehicle, this contract[,] or any resulting transaction[.]" Dkt. No. 20-1 at 12. Richardson's claims arise out of and relate to Defendants' alleged submission of credit applications in connection with his purchase of the Audi S5 pursuant to the installment contract and the resulting actions to collect on Richardson's car loan. As Infiniti's assignee, Santander is covered by the arbitration clause to the same extent as Infiniti. *See id.* As is Loprinzi, Infiniti's employee. *Id.*

ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION - 5

Richardson briefly opposes arbitration on the ground that the entire contract was procured by fraud, arguing he "was told the dealership would locate a lender but was not informed that multiple credit applications would be submitted" on his behalf.  Dkt. No. 22 at 2–3.  But because Richardson's challenge is to the validity of the entire contract, rather than to the arbitration clause in particular, his challenge must be resolved by the arbitrator, not the Court.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Townsend v. Quadrant Corp.*, 268 P.3d 917, 921–22 (Wash. 2012) (holding fraud claims were subject to arbitration where plaintiffs "did not claim that the arbitration clause itself was procured by fraud").

Finally, Richardson argues that Defendants waived their right to compel arbitration because Santander told him it could not locate his account, because "Defendants … initiated repossession activity" on his car, and because Santander told him his account was "paid in full[.]" Dkt. No. 22 at 6.  None of these acts, however, is inconsistent with each Defendant's right to compel arbitration.  *See Hill v. Xerox Bus. Servs.*, LLC, 59 F.4th 457, 460 (9th Cir. 2023) ("[A] party waives its right to compel arbitration when (1) it has knowledge of the right, and (2) it acts inconsistently with that right.").  To the contrary, Defendants promptly moved to compel arbitration upon being served with this lawsuit.  *See* Dkt. Nos. 17, 18, 20, 27.  And they have taken no action in this case "aimed at judicially resolving the merits" of Richardson's claims.  *See Hill*, 59 F.4th at 473 (emphasis omitted).  Defendants have therefore not waived their right to arbitrate Richardson's claims.

### III.  CONCLUSION

Accordingly, the Court GRANTS Santander's motion to compel arbitration (Dkt. No. 18) and GRANTS Infiniti and Loprinzi's motion to compel arbitration (Dkt. No. 20).  The parties are

ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION - 6

ORDERED to proceed with arbitration in accordance with the terms of the Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision).  This matter is STAYED pending arbitration.  The parties are DIRECTED to file a status report no later than the earlier of (1) seven days after the conclusion of the arbitration or (2) July 1, 2027, advising the Court whether the stay should remain in place or whether the parties seek further action from the Court.

Dated this 1st day of July, 2026.

Kymberly K. Evanson
United States District Judge

ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION - 7